KLINGENSMITH, J.,
concurring specially.
I write separately to address that portion of the trial court’s order requiring the former wife to obtain psychological counseling and ordering the child to attend wilderness camp. There is a misconception among some family court judges that a court overseeing a dissolution of marriage has powers similar to those of the court in a chapter 39 case, that being the power (or obligation) to emotionally “reunite” a child with a parent. Here, the court’s order provided that the former wife obtain counseling “until she is able to con *323 vince [the two minor children] that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds.” As the majority opinion points out, this language improperly puts the length of therapy in the control of the children, subject to ending whenever the children become “convinced.” More importantly, regardless of how desirable or beneficial the court may believe such counseling might be in any given case, a court in a chapter 61 case has no statutory authority to order therapy for any party with the goal of “rebuilding” a relationship between a parent and a child.
Unlike a judge in a chapter 39 proceeding, a judge presiding over a chapter 61 ease has no statutory authority to order parties into therapy to correct their behavior. And, similar to the court’s order here requiring the child to attend camp, a judge has no authority to order action by the child designed to remedy behavior that may be causing stress to the parent. For instance, there is no provision in chapter 61 authorizing the trial court to order an addicted parent into drug counseling, which a dependency judge can do under section 39.507(10), Florida Statutes, just as there is no provision in chapter 61 to order a parent into any other sort of therapy or counseling to address other behaviors. As the majority opinion correctly points out, section 61.13(5), Florida Statutes, has never been interpreted by any appellate court to provide the legal basis for ordering a parent or child into therapy, nor does any other provision of chapter 61 give such authority.
Chapter 61 also contains no language similar to sections 39.507(10) or 39.6011, Florida Statutes, authorizing the trial judge to fashion a reunification plan for parents and their children, or to order the parents into long-term, intensive therapy or counseling to effect a successful parenting or timesharing plan. Rather, section 61.13 directs the judge to take evidence of the facts concerning the separated parents and to fashion a parenting plan and time-sharing schedule that is in the child’s best interest. §§ 61.13(2)(c)2.a.; 61.13(3), Fla. Stat. (2012).
The Legislature intended that chapter 61 proceedings be quite different from chapter 39 cases. While reunification of the family is a goal of a chapter 39 dependency action, the family in a chapter 61 case is dividing due to irreconcilable differences. Reunification is not a goal. Although it is the public policy of the state, as provided in section 61.13(2)(c)l., “that each minor child- has frequent and continuing contact with both parents after the parents separate,” that public policy is qualified by the requirement under section 61.13(3) that the court must make the child’s best interests the primary consideration only in fashioning a parenting plan and a timesharing schedule, not in creating rehabilitative schemes designed to address issues for any particular family member. §§ 61.13(2)(c)l.; 61.13(3).
Remedying chronic relátionship difficulties between a parent and child is not a function of a chapter 61 proceeding. While it may be tempting for a judge to enter orders designed to unravel the tangled skeins of a family’s history and attempt to restore failed relationships, this is not the court’s role. It is the court’s obligation in a chapter 61 proceeding only to take the parties as they are, and to fashion an appropriate parenting plan and time-sharing schedule from that information. It is beyond dispute that chapter 61 does not expressly provide the authority to issue orders requiring therapy. Deriving such authority through penumbras formed by emanations of chapter 61 would allow limitless expansion of judicial power in this *324 area so long as a court deems it to be in the “best interests” of a child. It is not enough to say, as my colleague Judge Conner suggests, that this power exists but should only be used sparingly and in rare circumstances. To allow, let alone to require anything more would open a Pandora’s Box, giving unfettered and unrestrained discretion to trial judges to fashion all sorts of “therapeutic” orders to fit a given case, limited only by the court’s imagination.
In sum, under chapter 61, the court has no authority to fashion an order for a reunification plan and no authority to order either a parent or any child into therapy or counseling. Indeed, I believe there is a serious question about whether the court has any authority to order the children of a failed marriage to do anything whatsoever. These children are not parties to the dissolution proceeding, and it is dubious whether the court can compel their compliance via an enforceable order. The only real control the court has over these children is indirect, such as the ability to order conditions under which their parents shall interact with them. Unless and until the Legislature acts to provide such specific authority, courts cannot impose remedies such as orders for parental therapy out of whole cloth, however tempting it might be.
Therefore, despite having the best of intentions, I believe the court exceeded the scope of its statutory authority by ordering the former wife to obtain and pay for reunification therapy, and by ordering one of the children to attend a wilderness program.